## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

CARLOS PINTO-RIOS,

      Plaintiff.

v.

ARAPAHOE COUNTY,
SHERIFF TYLER S. BROWN,
SHERIFF'S DEPUTY T.H.,
SHERIFF'S DEPUTY C.W.,
SHERIFF'S DEPUTY J.S.P.,
SHERIFF'S DEPUTY B.D.,
SHERIFF'S DEPUTY J.C.,
SHERIFF'S DEPUTY M.S.,
SHERIFF'S DEPUTY C.R.,
SHERIFF'S DEPUTY J.R.,
SHERIFF'S DEPUTY C.H.,
SHERIFF'S DEPUTY M.M.,
SHERIFF'S DEPUTY J.D.,
SHERIFF'S DEPUTY P.C.,
SHERIFF'S DEPUTY K.B.,
SHERIFF'S DEPUTY SERGEANT HERKO,
SHERIFF'S DEPUTY FNU PALAZZOLO,
*KERRY PRUETT,*
*KATY KELLER*,
SUSAN GREENWALD,
STACIE HENGY, and
MICAH RHOAD

      Defendants.

---

## COMPLAINT AND JURY DEMAND

---

      Plaintiff, Carlos Pinto-Rios, by and through its attorneys of the Civil Rights Litigation Group, PLLC, hereby submits this Complaint and Jury Demand, and alleges as follows:

1

## INTRODUCTION

1.     When Plaintiff Carlos Pinto-Rios was first arrested and detained at the Arapahoe County Detention Center he had all of his fingers and was physically healthy. Ten days later, he was hospitalized for severe dehydration, acute renal failure, and severe frost-bite, which required all of his fingers to be amputated. Mr. Pinto-Rios' injuries were the result of Defendants' cruel and inhumane treatment by failing to provide him adequate heating, clothing/bedding, and water after he was stripped nude in solitary confinement and deliberately left to suffer with obvious serious medical needs.

2.     This is a civil action for damages, pursuant to 42 U.S.C. § 1983 and Colorado common law for Defendants' violation of Plaintiff Carlos Pinto-Rios' rights and other harms. Mr. Pinto-Rios seeks compensation for the injuries he suffered while the jail staff ignored his deteriorating and life-threatening condition, which caused him to undure pain and suffering, disabilities, emotional distress, medical care, and other damages and injuries needlessly caused by the Defendants' deliberate failure to take rudimentary care of Mr. Pinto-Rios while he remained helpless and hopeless in the custody and care of the Arapahoe County Detention Center.

## JURISDICTION AND VENUE

3.     Plaintiff's claims are brought pursuant to 42 U.S.C. §1983 and the Constitution and laws of the United States and state law.

4.     This Court has jurisdiction of the subject matter pursuant to 28 U.S.C. §1331.

5.     Supplemental jurisdiction over state law claims is conferred by 28 U.S.C. §1367.

6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because all the events alleged herein occurred in the State of Colorado.

7.      Jurisdiction supporting the Plaintiff's claim for attorney's fees and costs is conferred by 42 U.S.C. §1988.

## PARTIES

8.      Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

9.      Plaintiff, Carlos Pinto-Rios, was at all times relevant to this Complaint, a resident of the State of Colorado. At all times relevant to this Complaint, Mr. Pinto-Rios was a pretrial detainee at the Arapahoe County Detention Center ("ACDC") in Centennial, CO.

10.     Defendant Arapahoe County was, at all times relevant to the subject matter of this Complaint, a County in Colorado.

11.     Defendant Tyler S. Brown was, at all times relevant to the subject matter of this Complaint, the Sheriff of Arapahoe County and was responsible for the medical care and conditions of ACDC, as well as all policies, procedures and training required to provide adequate medical care to detainees in the jail under his supervision. Sheriff Brown was at all relevant times a law enforcement officer and acting under color of law. He is hereby identified in his individual capacity s a supervisor and his official capacity as Sheriff.

12.     Defendant Sheriff's Deputies C.W. (#00234), B.D. (#08088), J.C. (#09069), M.S. (#17047), C.R. (#12045), J.R. (#18067), M.M. (#09927), J.D. (#17063), P.C. (#10014), J.S.P./Palazzolo (#16080), T.H./Herko (#08005), C.H./Herko (#18078)[1], Herko, and Palazzolo (the "Jail Defendants") were, at all times relevant to the subject matter of this Complaint, employed

---

[1] Deputy J.S.P. is believed to possibly be Deputy Palazzolo. Deputies T.H. or C.H. are believed to possibly be Deputy Herko.

as law detention officers by and for the ACDC. They were at all relevant acting under color of law as agents of the Sheriff and Arapahoe County. They are hereby identified thier individual capacities.

13.     Defendant  Deputy Palazzolo was, at all times relevant to the subject matter of this Complaint, employed as a detention officer by and for ACDC. He was at all relevant times a law enforcement officer and acting under color of law as agents of the Sheriff and Arapahoe County. He is hereby identified in his official capacity.

14.     Defendant Sergeant Herko was, at all times relevant to the subject matter of this Complaint, employed as a supervisory detention officer at ACDC.  At all relevant times he was acting under color of state law as agents of the Sheriff and Arapahoe County. Mr. Herko is hereby identified in his individual capacity.

15.     At all times relevant to the Complaint, Correct Care Solutions, LLC, now known as Wellpath LLC, contracted with ACDC to provide medical services to detainees/inmates at ACDC.

*16.     Defendant Katy Keller was at all times relevant to this Complaint employed with Correct Care Solutions, LLC, now known as Wellpath LLC as a Mental Health Professional. She was acting under color of law in her capacity as a jail medical provider and is identified in her individual capacity.*

*17.     Defendant Kerry Pruett was at all times relevant to this Complaint employed with Correct Care Solutions, LLC, now known as Wellpath LLC as a Mental Health Professional. She was acting under color of law in her capacity as a jail medical provider and is identified in her individual capacity.*

18.     Defendant Susan Greenwald was at all times relevant to this Complaint employed with Correct Care Solutions, LLC, now known as Wellpath LLC as a RN. She was acting under color of law in her capacity as a jail medical provider and is identified in her individual capacity.

19.     Defendant Stacie Hengy was at all times relevant to this Complaint employed with Correct Care Solutions, LLC, now known as Wellpath LLC as a RN. She was acting under color of law in her capacity as a jail medical provider and is identified in her individual capacity.

20.     Defendant Micah Rhoad was at all times relevant to this Complaint employed with Correct Care Solutions, LLC, now known as Wellpath LLC as a RN. He was acting under color of law in his capacity as jail medical provider and is identified in his individual capacity.

## BACKGROUND FACTS

21.     Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

22.     On December 17, 2018, Plaintiff Carlos Pinto-Rios was arrested in Greenwood Village, Colorado.

23.     Mr. Pinto-Rios suffers from type-1 bipolar disorder and has Asperger's syndrome. Prior to being arrested, Mr. Pinto-Rios had been experiencing a manic and/or psychotic episode with paranoia, delusions, and/or hallucinations.

24.     At the time of arrest, Mr. Pinto-Rios asked officers to help him get mental health treatment, but instead was arrested and transported to ACDC.

25.     At ACDC, Mr. Pinto-Rios again requested mental health treatment, but was, instead,placed in a cell with another arrestee/detainee without mental health treatment.

26.     While in ACDC, Mr. Pinto-Rios told jail personnel that he wanted to kill himself.

27.     On or about December 19, 2019, jail guards entered Mr. Pinto-Rios' cellforcibly stripped Mr. Pinto-Rios naked, placed him in a solitary confinement, on suicide watch.

28.     Mr. Pinto-Rios spent the next ten days in a solitary confinement cell, which is a small cell with cement walls and was empty except for a hole in the floor for a toilet and food waste that can be "flushed" periodically by jail personnel. The cell was monitored on closed-circuit television and by officers conducting rounds through through a small window with a shutter that opens and closes from the outside.

29.     On suicide watch, jail deputies are required to check on detainees/inmates at continuous and regular 15-minute intervals. Accordingly, they wereregularly required to observe the conditions of the cell and Mr. Pinto-Rios'physical condition, as well as daily life activities such as sleeping, standing, lying down, walking, and eating, frequently.

30.     Additionally, jail medical personnel were required to check on the Mr. Pinto-Rios' medical condition daily, including providing medications, vitamins, and takingvital signs.

31.     Mental health personnel were required to interview and assess Mr. Pintos-Rios at reglar intervals.

32.     During the ten days of confinement, detention staff failed to ensure that the temperature of the cell was properly regulated. As a result, the temperature in the cell grew to freezing cold temperatures below 32 degres.

33.     For ten days, Mr. Pinto-Rios sat in a freezing cold solitary confinement cell that was so cold it caused Mr. Pintos-Rios to continually shiver, shake, and to urinate on himself.. Mr. Pinto-Rios was naked in the freezing solitary cell except for a compression vest and asmall blanket which was so small it could not cover his whole body.

34.      While in solitary, Mr. Pinto-Rios bundled himself in the vestand blanket in an attempt to keep warm. However, due to the small size of the blanket and bag and his height, neither item would completely cover him, or keep him warm, and parts of his body were constantly exposed to the frigid cold and in constant contact with the freezing foor.

35.      Over the course of approximately five days from December 23, 2018 to December 27, 2018 while Mr. Pinto-Rios was in solitary confinement, his condition deteriorated. He suffered from hypothermia and/or frost-bite to his fingers, toes, and nose, which ultimately led to necrosis,gangrene, and renal failure..

36.      Hypothermia and frostbite develop when a person is subjected to cold temperatures. With frostbite, a person's skin and underlying tissue becomes damaged and dies. With hypothermia, a person cannot maintain their body temperature and will lose blood-circulation in their extremities which can lead to gangrene and cause the victim to experience shivering, fatigue/exhaustion, confusion, drowsiness, decreased consciousness, and other symptoms as the condition grows from Grade 1 to Grade 3. Grade 2 frost-bite presents with swelling and skin will turn from reddish to a paler color and sometimes appear blue.Grade 3 frostbite presents with a bluish skin color and blisters may develop. Following rewarming, the skin will appear black and hard.

37.      Between approximately December 24, 2018 and December 27, 2018, Mr. Pinto-Rios became dangerously dehydrated and was denied water despite his pleas that he was very thirsty and had not had water in days. He became confused and disoriented saying his head felt funny and he was not feeling well and became lethargic – all symptoms of dehydration and hypothermia.

38. Over this crritical time period, Mr. Pinto-Rios' grew fatigued, drowsy, and confused. He lost consciousness at various times. His face lost color and grew pale. His fingers and toes swelled and formed blisters. His fingers and toes turned visibly purple and then black.His fingers turned necrotic and gangrenous. The symtpoms of his condition would have been obvious to anyone who viewed and/or check on him inside the cell.

39. Mr. Pinto-Rios blacked-out or otherwise lost awareness from his deteriorating condition. He experienced nightmares and/or hallucinations and otherwise devolved into serious mental health disarray.

40. On December 23, 2018, Deputies J.C, B.D., J.S.P., M.S., C.R., K.B., and Palazzolo were on duty and regularly and continuously checking on Mr. Pinto-Rios at 15-minute intervals because Mr. Pinto-Rios was on suicide watch. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose.

41. These deputies ignored the conditions in the cell and Mr. Pinto-Rios' physical symptoms that indicated he was obviously suffering from a serious health condition.

42. The above-named deputies would have also observed that Mr. Pinto-Rios was not being given water and/or drinking water. The deputies, by virtue of being human, and in attending to inmates' basic living necessities in the past, knew or should have known of an inmate's need for drinking water and that there was a likelihood that he would suffer from dehydration in the cell. Despite the obvious risks of continued dehydration and human suffering that result from the failure to provide drinking water, the deputies ignored that Mr. Pinto needed drinking water.

43.     On December 23, 2018, Defendants Kerry Pruett and Stacie Hengy observed Mr. Pinto-Rios and provided him with vitamins.  They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' physical condition.

44.     On December 24, 2018, Deputies B.D., C.R., M.S., J.R., C.W., and R.B. were on duty and regularly and continuously checking on Mr. Pinto-Rios at 15-minute intervals because Mr. Pinto-Rios was on suicide watch. Also on or about December 24, 2018, Defendant Herko observed and/or interacted with Mr. Pinto-Rios and informed the court that they would not be able to bring him to court. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' physical condition.

45.     The above-named deputies would have also observed that Mr. Pinto-Rios was not being given water and/or drinking water. The deputies, by virtue of being human, and in attending to inmates' basic living necessities in the past, knew or should have known of an inmate's need for drinking water and that there was a likelihood that he would suffer from dehydration in the cell. Despite the obvious risks of continued dehydration and human suffering that result from the failure to provide drinking water, the deputies ignored that Mr. Pinto needed drinking water.

46.     On December 24, 2018, Defendant Micah Rhoad observed Mr. Pinto-Rios and provided him vitamins. He would have felt and/or observed the freezing temperatures and lack of

heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' physical condition.

47.     On December 25, 2018, Defendants Hengy, Susan Greenwald, and Katy Keller, observed Mr. Pinto-Rios and provided him vitamins. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose, and lethargy but ignored the conditions in the cell and Mr. Pinto-Rios' physical condition.

48.     Defendant Keller spoke to Mr. Pinto-Rios and he stated wanted water and said he had not gotten water for days. She asked deputies to bring him water and stated they would do so but did not. She did nothing to ensure that Mr. Pinto-Rios was actually provided drinking water, despite her knowledge that he badly needed it.

49.     On December 25, 2018, Deputies C.H., M.M., J.D., M.S., and C.H. were on duty and regularly and continuously checking on Mr. Pinto-Rios at 15-minute intervals because Mr. Pinto-Rios was on suicide watch. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' and his symptoms of dehydration and kidney failure.

50.     The above-named deputies heard and understood that Mr. Pinto-Rios requested and was desperate for drinking water. The deputies, by virtue of being human, and in attending to

inmates' basic living necessities in the past, knew or should have known of an inmate's need for drinking water, and that there was a possibility – even likelihood from the notice Mr. Pinto-Rios gave that he suffered from dehydration in the cell. Despite the obvious risks of continued dehydration and human suffering that result from the failure to provide drinking water, the deputies ignored that Mr. Pinto needed and requested drinking water.

51.     On December 26, 2018, Defendant Rhoad provided vitamins to Mr. Pinto-Rios. Also on December 26, 2018, Defendant Keller observed and spoke to Mr. Pinto-Rios and he complained that his head felt funny and that he was very thirsty. She asked deputies to bring him water and they stated they would do so but did not. Defendants Rhoad and Keller would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' physical condition and his signs of hypothermia, dehydration and/or kidney failure, including increased lethargy, confusion, and decreased consciousness. They denied Mr. Pinto-Rios water despite his request and would have also observed and ignored that Mr. Pinto-Rios was not being given water.

52.     On December 26, 2018, Deputies J.D., P.C., C.W., J.C., M.S., J.C., and T.H. were on duty and regularly and continuously checking on Mr. Pinto-Rios at 15-minute intervals because Mr. Pinto-Rios was on suicide watch. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' his symptoms of

hypothermia, dehydration and/or kidney failure including increased lethargy, confusion, and fatigue/weakness and decreased consciousness.

53.     The above-named deputies heard and understood that Mr. Pinto-Rios requested and was desperate for drinking water. The deputies, by virtue of being human, and in attending to inmates' basic living necessities in the past, knew or should have known of an inmate's need for drinking water, and that there was a possibility – even likelihood from the notice Mr. Pinto-Rios gave that he suffered from dehydration in the cell. Despite the obvious risks of continued dehydration and human suffering that result from the failure to provide drinking water, the deputies ignored that Mr. Pinto needed and requested drinking water.

54.     Between December 23, 2018 and December 26, 2018, Deputy K.B. directed mental health personnel not to examine Mr. Pinto-Rios, despite obvious symptoms that would have put any lay person on notice that his mental heath was degrading and that he needed physical and mental health attention.

55.     On December 26, 2018 on or about 10:48 a.m., Deputies C.W. and/or P.C. came and took Mr. Pinto-Rios to court. Mr. Pinto-Rios had to be transported by wheelchair to court due to his condition and weakness/fatigue causing him to be unable to ambulate himself. The deputies wrapped his hands in blankets to obscure their swollen and discolored condition from view.

56.     In court, the presiding judge observed that Mr. Pinto-Rios appeared to be very sick, weak, and pale. The judge asked why he was brought to court, instead of a doctor, and told the deputies to take him to the hospital immediately.

57.     Deputies C.W. and/or P.C. ignored his obvious, serious medical needs and took him back to jail on or about 11:45 a.m. and did not take him to the hospital or take other steps to ensure Mr. Pinto-Rios received medical care.

58.     On December 27, 2018, Defendant Keller observed and spoke to Mr. Pinto-Rios. He stated that he was confused and not feeling well. She would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' physical severe condition and his symptoms of hypothermia, dehydration and/or kidney failure, including increased lethargy, confusion, and fatigue/weakness and decreased consciousness.

59.     On December 27, 2018, Deputies T.H. and C.W. were on duty and regularly and continuously checking on Mr. Pinto-Rios at 15-minute intervals because Mr. Pinto-Rios was on suicide watch. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' physical condition and his signs of hypothermia, dehydration and/or kidney failure including increased lethargy, confusion, and fatigue/weakness and decreased consciousness.

60.     The above-named deputies heard and understood that Mr. Pinto-Rios requested and was desperate for drinking water. The deputies, by virtue of being human, and in attending to inmates' basic living necessities in the past, knew or should have known of an inmate's need for drinking water, and that there was a possibility – even likelihood from the notice Mr. Pinto-Rios

gave that he suffered from dehydration in the cell. Despite the obvious risks of continued dehydration and human suffering that result from the failure to provide drinking water, the deputies ignored that Mr. Pinto needed and requested drinking water.

61.     On December 27, 2018, on or about 2:00 p.m., Defendant Grossaint observed that Mr. Pinto-Rios had severe frostbite on his hands and feet and asked Dr. Jeffrey Peterson to examine him.

62.     On December 27, 2018 on or about 2:25 p.m., Dr. Peterson examined Mr. Pinto-Rios and ordered him to be taken to the hospital by ambulance.

63.     As a result, Mr. Pinto-Rios was taken to Parker Adventist Hospital. He was diagnosed with severe dehydration, acute renal failure, and necrosis and dry gangrene due to frost-bite. By this time, his condition was life-threatening. He had black cyanosis on his nose and all ten fingers and toes. The frostbite to his fingers was Grade 3 and the frost bite to his toes was Grade 2. At this time, he would likely lose fingers and believed his fingers would likely auto-amputate over time. He was discharged to jail on December 29, 2018 on or about 11:17 a.m.

64.     On December 30, 2019 Mr. Pinto-Rios was re-admitted to Parker Adventist Hospital due to severe pain in his fingers and toes, being unable to walk, and being unable to perform daily life activities.

65.     On January 2, 2019, the tips of all of his fingers excluding his thumbs had to be amputated.

66.     The damage to his toes took months to heal and he had to live with continuous open wounds.

67.    Over the course of the preceding ten days, the named Defendants as well other medical and mental health personnel and jail guards observed the conditions in Mr. Pinto-Rios' cell and his deteriorating physical condition. They would have felt and/or observed the freezing temperatures and lack of heating, lack of adequate clothing and bedding, and that Mr. Pinto-Rios was suffering from cold-related illness, including changes in coloration and blistering to his fingers, toes, and nose but ignored the conditions in the cell and Mr. Pinto-Rios' signs of hypothermia, dehydration and/or kidney failure. They would have also observed and ignored that Mr. Pinto-Rios was not being given water and/or drinking. None of them acted to help save Mr. Pinto-Rios from the conditions of his confinement, his physical distress, or mental health deterioration.

68.    ACDC did not train its detention officers to recognize the signs/symptoms of serious medical needs of its detainees/inmates nor to treat those detainees/inmates in any manner.

69.    ACDC did not have appropriate medical staff, supervision, or management necessary to timely attend to/treat detainees/inmates who entered the facility or otherwise become sick while in the facility.

70.    Defendant Arapahoe County has a custom, policy and/or practice of placing detainees/inmates in solitary confinement cells which lack adequate heat in the winter-time, clothing them with only a compression vest, and providing them with only a thin blanket and bag to clothe themselves/sleep. This custom, policy, and/or practice was reasonably calculated to cause serious physical and mental damage and/or recklessly posed a risk of serious harm to Mr. Pinto-Rios and other detainees/inmates.

71.     Defendants Arapahoe County and Sheriff Brown failed to properly train and supervise their employees/contractors to ensure that detainees/inmates are provided with adequate heating, clothing/bedding, and water.

72.     Defendants Arapahoe County and Sheriff Brown failed to properly train and supervise their employees/contractors to recognize and respond to the symptoms of frostbite, hypothermia, necrosis, dry gangrene, dehydration, and renal failure.

73.     Defendant Brown had information and personal knowledge regarding the need to cure, correct or address the dangerous conditions of the jail in failing to provide adequate heating, clothing/bedding, and water and the negligence and risk of serious harm to Mr. Pinto-Rios and other detainees/inmates. However, he willfully and wantonly affirmatively acted or refused to act in reckless disregard for the rights and safety of ACDC detainees/inmates, including Mr. Pinto-Rios.

74.     Defendant Brown had information and personal knowledge regarding the need to cure, correct or address Mr. Pinto-Rios' symptoms of frostbite, hypothermia, dehydration, and renal failure, and the negligence and risk of serious harm to Mr. Pinto-Rios and other detainees/inmates. However, he willfully and wantonly affirmatively acted or refused to act in reckless disregard for the rights and safety of ACDC detainees/inmates, including Mr. Pinto-Rios.

75.     The incident caused Mr. Pinto-Rios severe pain and suffering, disability, physical impairment, emotional distress, pain and suffering, loss of enjoyment of life, economic injuries including significant medical costs, inconvenience, and other costs and expenses. He will be disabled for the rest of his life.

76.     These injuries are directly and proximately caused by the actions of Defendants in failing to adequately protect Mr. Pinto-Rios while he was in their custody by virtue of their failure to exercise due care for Mr. Pinto-Rios, their failure to adequately train and supervise their employees/contractors, and their deliberate indifference to Mr. Pinto-Rios' obvious, serious medical needs and/or negligence.

77.     Defendants violated Mr. Pinto-Rios' civil rights by ignoring the conditions of his cell, including lack of adequate heating in freezing winter temperatures, lack of adequate clothing/bleeding, and lack of water, subjecting Mr. Pinto-Rios to punishment that Defendants knew or should have known would cause him serious physical and emotional damage, and failing to address or treat him obvious, serious medical needs.

78.     Defendants' actions were done knowingly, voluntarily, recklessly, with wanton and willful disregard for the personal safety of Mr. Pinto-Rios, and the actions of the Defendants displayed deliberate indifference to the physical and mental well-being of Mr. Pinto-Rios.

79.     Defendants knowingly, recklessly, and intentionally disregarded an obvious, serious risk to Mr. Pinto-Rios.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. §1983 – Deliberate Indifference**
***(Against Medical Defendants and Defendant Arapahoe County)***

80.     Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

81.     At all times relevant to the Complaint, Mr. Pinto-Rios was under the care and treatment of the medical staff at ACDC, including Defendants Pruett, Keller, Greenwald, Hengy, and Rhoad (the "Medical Defendants").

82.     The Medical Defendants were acting under color of state law in their actions (and inaction) which occurred on or about December 17-December 27, 2018.

83.     Defendant Arapahoe County had a custom, policy, or practice of acting knowingly and with deliberate indifference in failing to provide adequate heating, clothing/bedding, and water to detainees/inmates in solitary confinement, imposing potentially damaging punitive measures on detainees/inmates, and/or denying obviously necessary medical services to detainees/inmates, including Mr. Pinto-Rios.

84.     The named Defendants knew or should have known of the conditions in Mr. Pinto-Rios' solitary confinement cell and the injuries that he sustained as a result.

85.     The named Defendants acted with deliberate indifference to Mr. Pinto-Rios' obviously serious medical needs and constitutional rights in failing to obtain and provide him with medical treatment in a timely and appropriate fashion. They did so despite his obvious serious medical needs, placing him at risk of substantial physical harm.

86.     The acts or omissions of the named Defendants were conducted within the scope of their official duties and employment. The acts or omissions of all Defendants were the legal and proximate cause of Mr. Pinto-Rios' injuries.

87.     Defendant Arapahoe County's unconstitutional policies, customs or practices, as described herein, were the legal and proximate cause of Mr. Pinto-Rios' injuries.

88.     The acts or omissions of each Defendant caused Mr. Pinto-Rios damages as described above.

89.     The actions of Defendants as described herein intentionally deprived Mr. Pinto-Rios of due process and the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her other damages.

90.     Defendants' actions and inaction violated Mr. Pinto-Rios' right to be free from cruel and unusual punishment while being incarcerated within the government-run detention facility, and have subjected Mr. Pinto-Rios to a deprivation of his rights, privileges and immunities secured by the federal Constitution.

91.     Defendants' deliberate, intentional, willful and wanton disregard to the obvious, serious medical needs of Mr. Pinto-Rios, posed by Defendants' disregard for the physical well-being of Mr. Pinto-Rios, and the lack of provision of timely or adequate medical care violated Mr. Pinto-Rios' rights under the Fourteenth Amendment to the United States Constitution.

92.     Defendants' conduct in violating Mr. Pinto-Rios' rights as described herein shock the conscience and is intolerable to society's standards of fundamental fairness.

93.     Mr. Pinto-Rios was and is entitled to reasonable protection from this sort of harm by those in charge of the jail.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. §1983 – Conditions of Confinement
#### (*Against Jail Defendants and Arapahoe County*)

94.     Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

95.     At all times relevant to the Complaint, Mr. Pinto-Rios was in custody and care of the Jail Defendants.

96.     The Jail Defendants acted under the color of law.

97.     At all times relevant to this Complaint, Mr. Pinto-Rios was a pre-trial detainee.

98.     During his confinement at ACDC, Mr. Pinto-Rios was subjected to inhumane conditions by the Jail Defendants, including inadequate heating and inadequate clothing/bedding for him to withstand the cold winter temperatures and not providing him water, placing his health and welfare at substantial risk.

99.     That these inhumane conditions were known to the Jail Defendants and no efforts were taken to remedy the conditions and such conditions were deliberately permitted to continue.

100.    These conditions amounted to punishment of Mr. Pinto-Rios in violation of the Eight Amendment right against cruel and unusual punishment made applicable to pre-trial detainees by the 14th Amendment.

101.    Jail officials are required "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmates' safety." *Barney v. Pulsipher*, 143 F.3d 1299, 1310 (10th Cir.1998).

102.    The conditions of Mr. Pinto-Rios' confinement bear no rational relationship to the legitimate nonpunitive purposes of ACDC or excessive in relation to that purpose.

103.    Defendant Arapahoe County had a custom, policy, or practice of acting knowingly and with deliberate indifference in failing to provide adequate heating and clothing/bedding to detainees/inmates in solitary confinement, including Mr. Pinto-Rios.

104.    The acts or omissions of each Defendant caused Mr. Pinto-Rios damages as described above.

105.    The acts or omissions of all Defendants were the legal and proximate cause of Mr. Pinto-Rios' injuries.

106.    Defendant Arapahoe County's unconstitutional policies, customs or practices, as described herein, were the legal and proximate cause of Mr. Pinto-Rios' injuries.

107.    The actions of Defendants as described herein intentionally deprived Mr. Pinto-Rios of due process and the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused her other damages.

108.    Defendants' actions and inaction violated Mr. Pinto-Rios' right to be free from cruel and unusual punishment while being incarcerated within the government-run detention facility, and have subjected Mr. Pinto-Rios to a deprivation of his rights, privileges and immunities secured by the federal Constitution.

109.    Defendants' deliberate, intentional, willful and wanton disregard to the obvious, inhumane and unsafe conditions of the cell and disregard for the physical well-being of Mr. Pinto-Rios violated Mr. Pinto-Rios' rights under the Fourteenth Amendment to the United States Constitution.

### THIRD CLAIM FOR RELIEF
**42 U.S.C. §1983 – Failure to Train and/or Supervise**
***(Against Defendants Arapahoe County and Sheriff Tyler S. Brown)***

110.    Plaintiff hereby incorporates all other preceding paragraphs of this Complaint as if set forth herein.

111.    Sheriff Tyler S. Brown was at all relevant times, policymakers for Defendant Arapahoe County whose edicts or acts may fairly be said to represent Arapahoe County's official policy, as Sheriff Brown established policies, procedures, customs, and/or practices for ACDC.

112.    These policies, procedures, customs, and/or practices became the policies, procedures, customs and practices for Defendant Arapahoe County itself.

113.    Defendant Arapahoe County developed and maintained policies, procedures, customs, and/or practices, including a failure to adequately train and/or supervise subordinate employees regarding medical care to detainees and confinement conditions, exhibiting or resulting in a deliberate indifference to the constitutional rights of persons in ACDC, which proximately caused the violation of Mr. Pinto-Rios' constitutional rights as set forth herein.

114.    Defendant Arapahoe County maintains policies, procedures, customs, and/or practices that tacitly or explicitly authorize the use of punitive measures as those exercised by the Deputy Defendants in this matter.

115.    Defendants Arapahoe County and Sheriff Brown failed to properly train and supervise their employees to ensure that detainees/inmates are provided with adequate heating and clothing/bedding and recognize and respond to medical emergencies.

116.    Defendants Arapahoe County and Sheriff Brown have a duty to implement, adopt and enforce policies and procedures to prevent detainees/inmates from being subjected to inhumane conditions including, but not limited to, providing adequate heating, clothing/bedding, and water to detainees/inmates.

117.    Defendants Arapahoe County and Sheriff Brown knew, or had reason to know, that their employees would foreseeably fail to provide detainees/inmates with adequate heating, clothing/bedding, water and/or adequately identify and respond appropriately to medical emergencies, violating detainees' constitutional rights.

118.    The inadequate training and supervision provided by Defendants Arapahoe County and Sheriff Brown resulted from a conscious or deliberate choice to follow a course of action from among various alternatives available to Defendants.

119.    In light of the duties and responsibilities of those guards and other Arapahoe County personnel who exercised control over individuals incarcerated at ACDC, the need for specialized training and supervision is so obvious, and the inadequacy of training and/or supervision is so likely to result in the violation of constitutional rights such as those described herein, that Defendants Arapahoe County and Sheriff Brown are liable for their failure to so train and to appropriately supervise such guards and other ACDC personnel.

120.    Defendants Arapahoe County and Sheriff Brown maintained a deliberate indifference to the obvious serious medical needs of jail detainees/inmates, including Mr. Pinto-Rios, knowing that serious consequences could be suffered by Mr. Pinto-Rios by failing to properly train and supervise their employees. Defendants Arapahoe County and Sheriff Brown could have and should have pursued reasonable methods for the training and supervision of such employees, but failed to do so.

121.    Defendants Arapahoe County and Sheriff Brown's policies, customs, or usages in failing to properly train and supervise their employees were the moving forces and proximate cause of the violation of Mr. Pinto-Rios' constitutional rights.

122.    The acts or omissions of Defendants Arapahoe County and Sheriff Brown caused Mr. Pinto-Rios damages in that she suffered extreme physical and mental pain and injury and disability as described above.

123.    As a direct and proximate cause and consequence of the unconstitutional policies, procedures, customs, and/or practices described above, Plaintiff suffered injuries, damages and losses as set forth herein.

124.    The actions of Arapahoe County and Sheriff Brown as described herein intentionally deprived Mr. Pinto-Rios of due process and the rights, privileges, liberties, and immunities secured by the Constitution of the United States of America, and caused him other damages.

### FOURTH CLAIM FOR RELIEF
*Common Law Negligence –*
**Operation of Jail Facility**
**(Against Defendant Brown and/or Arapahoe County)**

125.    Defendant Brown, as Sheriff of the County Jail,  was statutorily responsible for the safe and healthy confinement of inmates at the jail, pursuant to C.R.S. § 30-10-511, §§ 17-26-101-102. U

126.    The Sheriff breached his duty of reasonable care due to Mr. Pinto-Rios by negligently operating the jail, personally, and by and through his deputies, under the doctrine of *respondeat superior*.

127.    Defendant Brown has failed to take reasonable precautions to maintain the jail facility in a manner that does not contribute unnecessarily to the illness of those confined in the jail, and the suffering of those with illnesses at the jail when they become sick and by ignored inhumane cell conditions, including lack of adequate heating in freezing winter temperatures, lack of adequate clothing/bedding, and water.

128.    Defendant Brown breached his duty of care to Mr. Pinto-Rios, by negligently training and supervising his detention and medical staff with regard to illness, symptoms of illness,

recognizing signs of the life-threatening-illness(es), both bore and not bore by the facility, and to respond appropriately so that medical care, follow up care, medication, and/or proper attention could be readily provided to inmates who suffered from the type of medical problems of which Plaintiff suffered.

129.    As the direct and proximate result or substantial factor of Defendants actions and omissions to act in accordance with appropriate standards of care and established National and Colorado corrections standards, Mr. Pinto-Rios became ill with a life-threating illness and which illness was unnecessarily aggravated while at the facility.

130.    As a further direct and proximate result or substantial factor of Defendants' actions and omissions to act in accordance with the proper standards of care and established National and Colorado corrections standards, Mr. Pinto-Rios has suffered injuries as listed above.

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of the Carlos Pinto-Rios, against the Defendants, and award the following:

a.  Compensatory and consequential damages, including damages for physical injury, permanent disability and disfigurement, economic losses, emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

b.  Punitive damages against the individual defendants in an amount to be determined at trial;

c.  Pre and post-judgment interest, costs and expert witness fees, reasonable attorney fees by statute, and as allowed by law, and

d.   Any other such other relief that the Court deems just and proper.


**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE**


Respectfully submitted this 17th day of December, 2020.


*/s/ Rachel B. Maxam*
Raymond K. Bryant, #42586
Rachel B. Maxam, #47711
Civil Rights Litigation Group, PLLC
1543 Champa Street, Suite 400
Denver, CO 80202
Phone: 720-515-6165
Fax: 720-465-1975
Email: raymond@rightslitigation.com
Email: rachel@rightslitigation.com

*Attorneys for Plaintiff*