IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge S. Kato Crews

Civil Action No. 1:20-cv-03698-RMR-SKC

CARLOS PINTO-RIOS,

    Plaintiff,

v.

TYLER S. BROWN, *et al.*

    Defendants.

---

**ORDER RE: MOTION TO AMEND SCHEDULING ORDER TO PERMIT FACILITY INSPECTION &
FOR FORTHWITH DETERMINATION [DKT. 143]**

---

    The alleged facts underlying this action are well-tread ground at this stage of the proceedings. But several facts nevertheless bear repeating in consideration of Plaintiff's Motion to Amend Scheduling Order to Permit Facility Inspection & for Forthwith Determination [Dkt. 143], which is before the Court on referral.

    According to the Amended Complaint, at all relevant times, Plaintiff was a pretrial detainee at the Arapahoe County Detention Center ("Facility"). He suffered severe frostbite resulting in amputation of his fingers, at least in part, because he was stripped nude, deprived of bedding, and placed in a solitary-confinement cell with inadequate heating. [Dkt. 21.]

1

On February 15, 2022, this Court convened a Scheduling Conference to discuss the deadlines and limitations to govern discovery in this matter. [Dkt. 61.] During that discussion, Plaintiff's counsel requested abundantly more than the presumptive limit of interrogatories contemplated by the Federal Rules of Civil Procedure. The Court afforded Plaintiff more than the presumptive number, but not the full allotment Plaintiff requested. The Court explained to Plaintiff's counsel it was likely to increase these limitations upon a showing of good cause but was unwilling to do so at the Scheduling Conference because counsel had "yet to be able to articulate to me that you've sat down and given some thought to what types of interrogatories you might want to direct to each individual defendant." [Dkt. 70 at pp.28-29.] The Court set Plaintiff's discovery limitations at 50 interrogatories, 25 requests for production, and 35 requests for admission for each party group. [*Id.* at pp. 29-30.][1] Although Plaintiff, through counsel, indicated his understanding of these discovery limitations, Plaintiff nevertheless proceeded as if the Court's limitations applied to each Defendant individually. [*See* Dkts. 76, 92.]

Then, on June 10, 2022, four months after the Scheduling Conference, Plaintiff filed a motion seeking nearly 200 additional interrogatories, 50 additional requests for production, and over 200 additional requests for admission to propound to the Sheriff and deputy Defendants. [*See* Dkt. 76, 82.] This Court set a discovery

---

[1] The Well Path Defendants are not directly implicated in the present dispute, but they join in the Response.

2

conference for September 27, 2022. The day before the conference, District Judge Rodriguez adopted this Court's recommendation and dismissed Plaintiff's *Monell* claim against Sheriff Brown. [Dkt. 107.] Relevant here, based on the discussion between the parties and the Court during the discovery conference, as well as Judge Rodriguez's dismissal of the *Monell* claim, the Court determined there was no longer a need to serve written discovery on the Sheriff entity based on the dismissal. While Plaintiff faulted the Court for affording Plaintiff too few written discovery requests in Plaintiff's view, the Court reminded Plaintiff the limitations were set based on counsel's inability at the Scheduling Conference to articulate the types of requests Plaintiff needed or wanted to direct to each individual defendant. Regardless, at the conclusion of the discovery conference the Court did permit Plaintiff to serve eight additional interrogatories, two additional requests for production, and five additional requests for admission on each individual deputy Defendant.[2] [Dkt. 108.]

On November 29, 2022, Plaintiff's counsel served the deputy Defendants a "Notice of Facility and Equipment Inspection." [Dkt. 139-2.] This Notice purported to advise the Defendants that Plaintiff and his HVAC expert would be conducting an inspection of the Facility on December 20, 2022. The Notice also requested inspection of various HVAC documents, architectural drawings, maintenance records, drinking implements, and clothing and bedding samples. The deputy Defendants opposed the

---

[2] It also allowed Plaintiff to serve seven additional requests for admission and six additional interrogatories on the individual medical defendants.

inspection because Plaintiff failed to make his request under Fed. R. Civ. P. 34., of which he had used his full allotment. In Plaintiff's Notice to the Court regarding the parties' dispute over a facility inspection, he argued an inspection was treated differently and separately from document requests under Rule 34. [Dkt. 139.] The Court disagreed and issued the following Minute Order, in relevant part:

> Plaintiff seeks to inspect the jail facility that housed him. But Plaintiff has used his allotment of 25 Requests for Production provided in the Scheduling Order. Requests for Production are provided under Fed. R. Civ. P. 34. Rule 34 includes requests for "entering onto land." The Rule expressly provides "[a] party may serve on any other party a request within the scope of Rule 26(b): * * * *to permit entry onto designated land or other property* possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." (Emphasis added.) Plaintiff served Defendants with no such request, but instead served a "Notice of Facility and Equipment Inspection," which is not contemplated by Rule 34.
>
> Moreover, Plaintiff's position is inconsistent. First, while he argues requests for inspection are separate and apart from requests for production, and therefore, are not included in his limit of 25 for requests for production, Plaintiff did not mention a facility inspection in the proposed scheduling order he submitted, let alone ask this Court for a limitation on the number of facility inspections he could perform. This suggests Plaintiff understood the limitation on "requests for production" was a catch-all limitation on any requests made under Rule 34. Second, Plaintiff's inspection "notice" cites Rule 34(a)(2), again suggesting he understands Rule 34, in all its respects, governs his desire to conduct a facility inspection. *See* the 2006 Amendment to Rule 34 ("Rule 34(a)(1) is further amended to make clear that tangible things must -- like documents and *land sought to be examined* -- be designated in the request.") (Emphasis added.) Third, consistent with Rule 34, the Scheduling Order limits the parties to 25 "requests for production" as opposed to a narrower "requests for production of documents." Plaintiff attempts to graft on an "of documents" limiter that is not there. A "request for production" reasonably includes a request to produce land

4

> for entry and inspection consistent with a plain reading of Rule 34 as a whole. For these reasons, this Court takes no action on the Notice . . ..

[Dkt. 140.]

Thereafter, Plaintiff filed the present Motion to Amend the Scheduling Order, which seeks one additional request for production with seemingly numerous indiscreet subparts. [Dkt. 143.] The Court has carefully reviewed the Motion and related briefing, the exhibits, and the entire record of proceedings. No hearing is necessary. For the following reasons, the Motion is DENIED.

## DISCUSSION

A scheduling order may be amended only upon a showing of good cause. Fed. R. Civ. P. 16(b)(4). "Rule 16(b) does not focus on the bad faith of the movant, or the prejudice to the opposing party. Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colo. Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000). "Indifference by the moving party seals off this avenue of relief irrespective of prejudice because such conduct is incompatible with the showing of diligence necessary to establish good cause." *O'Connell v. Hyatt Hotels of Puerto Rico*, 357 F.3d 152, 155 (1st Cir. 2004).

In support of his request, Plaintiff asserts an inspection is necessary because, despite having deposed numerous witnesses and used his allotment of written discovery requests, Plaintiff still has insufficient information to understand how the conditions of his confinement could have caused his frostbite. According to Plaintiff,

5

"lingering questions [ ] persist, such as: how the facility got so cold that it caused Plaintiff to suffer frostbite, how long the facility was so cold that it caused frostbite, what part of the facility was defective or otherwise involved in causing the frostbite, . . . and how the institutional entities and its various employees could have known (or not known) and overlooked such problems for any duration of time." [Dkt. 143 p.3.] Plaintiff further argues an inspection is necessary to explore the Defendants' defense that Plaintiff's cell was properly heated.

Rule 26(b)(1) explains that the proper scope of discovery is "any nonprivileged matter that is relevant to any party's claim or defense." But a district court is not "required to permit plaintiff to engage in a 'fishing expedition' in the hope of supporting his claim." *McGee v. Hayes*, 43 F. App'x 214, 217 (10th Cir. 2002). Discovery is "meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support." *United States v. 2121 Celeste Rd. SW, Albuquerque, N.M.*, 307 F.R.D. 572, 582 (D.N.M. 2015).

As a preliminary matter, neither the Motion nor the proposed "Request for Inspection" specify to whom the request is directed. To be sure, throughout the Motion, Plaintiff discusses the need to investigate defenses of the Defendants generally. However, the individual deputy Defendants would not have the authority to grant Plaintiff access to the facility or related documents. Thus, the request is only properly propounded on Sheriff Brown; and the only claim remaining against Sheriff Brown is Plaintiff's claim for common law negligence. But the Motion only mentions

"negligence" once, and that's simply in reference to the claims Plaintiff brought that remain in the case. Other than broadly and generally speaking, Plaintiff does not offer any direct explanation as to how the proposed inspection is relevant to his negligence claim, or any applicable defenses asserted by the Sheriff. This is particularly true when considering Plaintiff was confined and exposed to temperatures and conditions that existed in December 2018. Plaintiff does not explain the relevance of a facility inspection conducted four years later when temperatures and related conditions might reasonably be presumed to be different. This is beside the point that Plaintiff's request indicates he and his expert would, at some point, seek to start and stop the facility's HVAC system. As Plaintiff well knows, the facility is an operating detention center currently housing and employing a number of individuals. Based on such a scanty demonstration of relevance, this request is unduly burdensome and fails to demonstrate it is proportional to the needs of the case. *See GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 4282291, at *11 (D. Colo. July 24, 2020) ("[A]ny proportionality review must begin with a determination of the relevance of the requested discovery, as the degree of relevance of the requested discovery will necessarily drive the remaining questions of how many resources should reasonably be expended in pursuit of it.").

Further, the conditions of the Facility have been at issue since Plaintiff filed this lawsuit in December 2020—over two years ago. The Court acknowledges this case has had some delays not directly attributable to Plaintiff—such as those

7

associated with appointing guardians ad litem, scheduling Plaintiff's deposition in Puerto Rico, etc.—but this request to yet again augment the discovery limitations because Plaintiff believes an inspection is now "the logical next step," defies logic. Indeed, the December 2020 Complaint alleges, "[f]or ten days, Mr. Pinto-Rios sat in a freezing cold solitary confinement cell that was so cold it caused Mr. Pintos-Rios to continually shiver, shake, and to urinate on himself. Mr. Pinto-Rios was naked in the freezing solitary cell except for a compression vest and a small blanket which was so small it could not cover his whole body." [Dkt. 1 ¶33.] Another allegation refers to parts of Plaintiff's body being "constantly exposed to the frigid cold and in constant contact with the freezing foor (sic)." [*Id.* at ¶34.] Considering these allegations known to Plaintiff when he first filed this case, Plaintiff fails to explain why a logical first or intermediate step wasn't a Rule 34 request for a site inspection when he still had Rule 34 requests available to him. Thus, to the extent Plaintiff now argues a site inspection is relevant to his negligence claim or some associated defense, the argument is woefully underdeveloped and fails to meet Plaintiff's burden.

To be sure, Plaintiff does not contend additional discovery is necessary due to new facts learned during discovery. Instead, the proposed inspection is, at its core, based on Plaintiff's admitted dissatisfaction with the information he already obtained and a desire to now explore other avenues. To the point, he argues: "Plaintiff has conducted numerous depositions and has been unable to acquire sufficient evidence regarding these issues. . . . [I]t appears that may of the defendants either do not know

8

or are playing dumb about their knowledge with regard to the conditions of Plaintiff's confinement." [Dkt. 143.] This is a definitional fishing expedition. "The discovery rules provide no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know[.] This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery." *Hilt v. SFC Inc.*, 170 F.R.D. 182, 186-87 (D. Kan. 1997); *see also Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves."). And to the extent Plaintiff contends he only recently understood an inspection to be necessary, as mentioned above, the allegations in his pleadings and the points previously raised by this Court in its November 30, 2022 Minute Order [Dkt. 140] suggest otherwise.

It is also of no moment that the Court and the parties did not discuss, and the Scheduling Order does not specifically reference, a site inspection. The Court addressed this issue in its November 30, 2022 Minute Order [Dkt. 140], stating in part "[a] 'request for production' reasonably includes a request to produce land for entry and inspection consistent with a plain reading of Rule 34 as a whole." But Plaintiff nevertheless further argues this Court's previous denial of additional RFPs for him to serve on the Sheriff was under the rubric of *document* production, and therefore, the Court had not considered the need for an inspection. [Dkt. 147 at p.6.] The Court certainly did not consider that which Plaintiff failed to raise before the

9

Court. Plaintiff asked the Court for additional document requests; Plaintiff said nothing of a site inspection.

Regardless, the Court has repeatedly accommodated Plaintiff's evolving understanding of his own discovery needs by granting additional written discovery and depositions, so much so that discovery in this case has been quite expansive. The Court is not persuaded Plaintiff's belated realization an inspection "might be more helpful to [his] case than [he] had previously guessed" amounts to good cause for yet another expansion of the discovery limitations. *See Demmer v. Fitzgibbons*, No. 11-cv-01802-CMA-KMT, 2012 WL 872666, at *2 (D. Colo. Mar. 14, 2012).

Lastly, an underlying theme raised by Plaintiff in the Motion (peppered in footnotes) is that a persistent issue in this case has been Plaintiff's ongoing expressed "need" to exceed the discovery limitations imposed by the Court because the "size and scope of this case" is unusually large and complex. [*See, e.g.,* Dkt. 143 n.3.] While the suffering and injuries Plaintiff alleges he endured are indisputably tragic, this case is no larger nor more complicated than the significant majority of cases in federal court.[3] Plaintiff acknowledges the Court has been critical of his approach to discovery at different points, and that criticism persists with this Motion. In the Court's view, the discovery issues in this case have not stemmed from the size, complexity, or any

---

[3] Unconstitutional conditions of confinement is not a novel theory of law, and in cases involving incarcerated persons, it is not unusual to have numerous defendants. And unlike many claims under the Eighth and Fourteenth Amendments, there is apparently video evidence of Plaintiff in his cell during the period relevant to this case.

nuance associated with the case. They have instead stemmed from Plaintiff's disorderly approach to discovery.

First, as mentioned above, during the Scheduling Conference the Court afforded Plaintiff more than the presumptive number of interrogatories, but not the full allotment Plaintiff requested because counsel was unable to articulate what types of additional interrogatories were needed to direct to each individual defendant. [Dkt. 70 at pp.28-29.] But even after setting the limits on written discovery, Plaintiff nevertheless proceeded as if the Court's limitations applied to each Defendant individually. [See Dkts. 76, 92.]

Second, four months after the Scheduling Conference, Plaintiff filed a motion seeking nearly 200 additional interrogatories, 50 additional requests for production, and over 200 additional requests for admission to propound to the Sheriff and deputy Defendants. [See Dkt. 76, 82.] Again, the Court granted some, but not all, of these additional requests. [Dkt. 108.]

Next, in November 2022, the parties disputed the number of depositions of "healthcare providers" Plaintiff could take. [*See* Dkt. 138.] In their proposed scheduling order, the parties proposed depositions of each "healthcare provider." Counsel had not conferred over their respective understandings of what or which medical professionals constituted "healthcare providers," and no counsel defined the term in their proposed scheduling order. The Court issued a Scheduling Order accepting the parties' proposal. It turned out the parties ascribed different meanings

11

to "healthcare provider" which led to a discovery dispute. Plaintiff ascribed an expansive meaning and Defendants a narrow one. The Court found the definition proposed by Defendants to be consistent with the proportional needs of the case under Rule 26(b)(1) because Plaintiff's definition would allow for a largely undetermined number of depositions of medical professionals, including those whose involvement in the facts of this case may be only tangential. [Dkt. 138.] Relevant here, Plaintiff faulted defense counsel for having not defined "healthcare provider" in the parties' proposed scheduling order while ignoring and being nearly unwilling to acknowledge that Plaintiff *also* had not offered a definition of the term until he sought to expand his number of depositions. Yet again, the Court afforded Plaintiff additional depositions, but not to the extent he sought.

Which brings us to the present Motion, where Plaintiff now argues things like a facility inspection is only now a logical next step after he used his allotment of Rule 34 requests; or, the Court failed to contemplate or distinguish between inspections and documents under Rule 34 in the Scheduling Order; or, the case is unusual and complicated warranting the expansion of discovery. This Court has had enough of it. *See Babakr v. Fowles*, No. 20-2037-SAC-ADM, 2022 WL 4103850, at \*6 (D. Kan. Sept. 8, 2022) ("Instead, the record fully supports the magistrate judge's oft-repeated impression of the plaintiff being dilatory. The plaintiff's arguments reveal, at best, a piecemeal approach to discovery which the magistrate judge never encouraged but discouraged."); *De Alba v. Velocity Invs.*, LLC, No. 21-CV-547-AJB-WVG, 2022 WL

12

3327382, at *6 (S.D. Cal. Aug. 10, 2022) ("The Court will not reward this dilatory and haphazard approach to discovery . . .."); *Schmelzer v. IHC Health Servs., Inc.*, No. 2:19-CV-00965-TS-JCB, 2022 WL 16646456, at *6 n.56 (D. Utah Feb. 10, 2022), objections overruled, No. 2:19-CV-965 TS, 2022 WL 1224976 (D. Utah Apr. 26, 2022) ("But even if all of the pre-2015 cases were unable to convince a person that the 'ask-for-the-universe' approach to discovery was at least 'mostly dead,' there can be no doubt after the 2015 amendments that this approach is 'all dead.'") (quoting *The Princess Bride* (1987)).

The Federal Rules of Civil Procedure impose a "stop and think" obligation on the party serving discovery requests and the party responding. *Witt v. GC Servs. Ltd. P'ship*, 307 F.R.D. 554, 561 (D. Colo. 2014). As previously highlighted, this is in part because there is "no absolute, unharnessed right to find out every conceivable, relevant fact that opposing litigants know[.] This requires counsel in any given case to exercise professional judgment and determine the priorities of discovery." *Hilt*, 170 F.R.D. at 186-87. Throughout the discovery disputes in this case, Plaintiff has struggled to demonstrate to this Court that he has taken a thoughtful and deliberate approach to discovery. From the start he was unable to explain to the Court why he needed an abundant number of interrogatories to the individual defendants, and at other times he faulted opposing counsel or the Court for his claimed discovery predicaments. At some point, Plaintiff must assume responsibility for his discovery woes.

\* \* \*

A "Scheduling Order is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded by counsel without peril." *Washington v. Arapahoe Cnty. Dept. of Soc. Servs.*, 197 F.R.D. 439, 441 (D. Colo. 2000) (internal quotations and citations omitted). "To the contrary, a scheduling order is an important tool necessary for the orderly preparation of a case for trial." *Id*. Here, Plaintiff eschewed discovery that might have uncovered the information he now seeks, and therefore, he must bear the consequences of his choice.

For all the reasons above-stated, Plaintiff has not met his burden to show good cause to further amend the Scheduling Order. The Motion is DENIED.

DATED: January 9, 2023

BY THE COURT:

S. Kato Crews
United States Magistrate Judge