**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 20-cv-3698-RMR-JPO

CARLOS PINTO-RIOS,

      Plaintiff,

v.

TYLER S. BROWN, *et al.*,

      Defendants.

---

## ORDER

---

This matter is before the Court on the Motion to Dismiss Plaintiff's Second Amended Complaint filed by Defendants Arapahoe County Sheriff Tyler Brown ("Sheriff") and Deputies Hobaugh, Wenzel, Palazzolo, Dube, Craft, Smith, Roll, Houghtaling, Miller, Davis, Cook, Purcell, and Triska (the "Deputies") (collectively, the "Sheriff Defendants") at ECF 230. Plaintiff filed a Response at ECF 253, and the Sheriff Defendants filed a Reply at ECF 265. The Motion is fully briefed and ripe for review. For the reasons set forth below, the Sheriff Defendants' Motion is GRANTED IN PART and DENIED IN PART.

## I.      BACKGROUND[1]

Plaintiff Carlos Pinto-Rios was arrested in Greenwood Village, Colorado on December 17, 2018. ECF 212 ¶ 35. Plaintiff has type-1 bipolar disorder, and prior to and

---

[1] The facts are drawn from the allegations in Plaintiff's Second Amended Complaint, which must be taken as true when considering a motion to dismiss. *Wilson v. Montano*,

at the time of his arrest, he was experiencing a bipolar episode with paranoia, delusions, and hallucinations. *Id*. ¶¶ 36–37. The arresting officers took Plaintiff to the Arapahoe County Detention Center, where he was ultimately placed in a suicide watch cell in the behavioral health unit ("BCU"). *Id*. ¶¶ 38, 51.

The BCU cell was small, with cement flooring, and was devoid of running water, sinks, and furnishings. *Id.* ¶ 53. There was a window and a hole in the floor for excrement and food waste, with flushing controlled by jail personnel. *Id.* According to Plaintiff, the cement construction and windows are known to be good conductors of cold air. *Id.* While in the BCU cell, Plaintiff was naked, except for a suicide smock, and a special blanket. *Id.* ¶ 54.

Plaintiff continued to suffer from severe mental illness while in the BCU. *Id.* ¶ 55. Between December 17 through December 27, 2018, Plaintiff alleges that he was not sleeping, agitated, compulsively pacing and ritualistically running his hands, suicide smock, and/or bedding over the walls, singing, dancing, talking nonsensically to himself and/or people who were not there, yelling and screaming, and eating and playing with feces. *Id.* He alleges his deteriorating condition led to nightmares or hallucinations and he otherwise devolved into serious mental health disarray. *Id.* ¶ 57.

Relevant here, the individual defendants include Arapahoe County Sheriff Tyler S. Brown and thirteen sheriff's deputies. *Id.* ¶ 10–11. According to the pleadings, the deputies were responsible for conducting regular wellness checks on the detainees,

---

715 F.3d 847, 850 n.1 (10th Cir. 2013) (citing *Brown v. Montoya*, 662 F.3d 1152, 1162 (10th Cir. 2011)).

bringing them meals and water, and accompanying the health professionals during their rounds.[2] *Id*. ¶¶ 58–61.

Due to Plaintiff's severe mental illness, he was unable to care for his basic needs, make decisions or appreciate his actions, including eating and drinking, or otherwise make complaints about his mental and bodily needs during his detention. *Id*. ¶ 79. While in the BCU, Plaintiff became dehydrated to the point of renal failure. *Id*. ¶ 86. According to arrest and facility records, Plaintiff was 6' 3" and 180 lbs. when he entered the facility on December 17, 2018, and weighed 147 lbs. ten days later, on December 27, 2018. *Id*. ¶ 106. Due to his mental illness, Plaintiff contends that he was not psychologically able to notify anyone when he needed food or water. *Id*. ¶ 90. When he kicked or threw his food or otherwise failed to eat or drink due to his psychotic state, no one at the facility would replace these items. *Id*. ¶ 91.

Plaintiff alleges that on the nights of December 26 and 27, temperatures in his cell dropped below freezing, which resulted in frostbite on Plaintiff's fingers, toes, and the tip of his nose. *Id*. ¶¶ 167–70. After his digits thawed, Plaintiff's fingers and toes "turned red, purples, and/or progressed to black," and were ultimately partially amputated. *Id*. ¶ 172.

Relevant here, Plaintiff brings five claims for relief against the Sheriff Defendants: (1) deliberate indifference to serious mental health needs; (2) deliberate indifference "regarding inadequate food and water;" (3) deliberate indifference regarding serious

---

[2] Plaintiff has also sued Wellpath, LLC, the company contracted to provide medical services to detained and incarcerated persons at the Arapahoe County Detention Center, and its individual employees. The claims against the medical defendants are the subject of a separate motion to dismiss, ECF 247, and are not at issue here.

medical needs – cold exposure and frostbite; (4) *Monell* liability against the Sheriff in his official capacity; and (5) negligent operation of a jail against Sheriff Brown. *Id.* ¶¶ 201–380. The Sheriff Defendants seek dismissal of each of these claims.

## II.   LEGAL STANDARD

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). But the Court is not "bound to accept as true a legal conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Granting a motion to dismiss "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (quotation omitted). As a result, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is

very remote and unlikely." *Id.* (quoting *Twombly*, 550 U.S. at 556 (internal quotation omitted)).

### III.     ANALYSIS

The Sheriff Defendants move to dismiss all claims against them in the Second Amended Complaint (the "SAC"). They argue that Plaintiff fails to state a claim under Rule 12(b)(6) regarding his § 1983 and *Monell* claims (Claims 1–4). They further contend that Plaintiff's claim for negligence against Sheriff Brown (Claim 5) is barred by the applicable statute of limitations.

### A.     Municipal Liability (Claim Four)

It is long-standing precedent that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Iqbal*, 556 U.S. at 676 (citing *Monell v. Department of Social Services*, 436 U.S. 658, 691 (1978)); *see also City of Canton v. Harris*, 489 U.S. 378, 385 (1989) (A governmental entity "can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue.") (citing *Monell*, 436 U.S. at 694-95, 698). "[M]unicipal liability under § 1983 attaches where - and only where - a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1188 (10th Cir. 2010) (internal quotation marks and citations omitted); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 769 (10th Cir. 2013) ("[T]he Supreme Court require[s] a plaintiff to show that the policy was enacted or maintained with deliberate indifference to

an almost inevitable constitutional injury."). Thus, to establish municipal liability under *Monell*, a plaintiff must show (1) a municipal employee committed a constitutional violation and (2) a municipal policy or custom was the moving force behind the violation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

In a previous Recommendation addressing Sheriff Brown's Motion to Dismiss, then Magistrate Judge S. Kato Crews analyzed Plaintiff's municipal liability claim in some depth. *See* ECF 103 at 7–13.[3] In recommending dismissal, Judge Crews specifically concluded that Plaintiff failed to state a *Monell* claim based on a custom or practice because he had not alleged any similarly situated individuals whose constitutional rights had been violated in the same fashion. *Id*. at 8–9. Judge Crews also concluded that Plaintiff's contentions regarding Sheriff Brown's failure to train or supervise were similarly deficient. In adopting the Recommendation after conducting a de novo review, this Court also observed that Plaintiff failed to identify any comparators, and therefore, his pleading failed to plausibly allege a *Monell* claim. ECF 107 at 2.

Now, despite having conducted wide ranging discovery over the course of three years, Plaintiff still fails to identify in the SAC even one other detained or incarcerated person whose rights were violated in a manner akin to his. Plaintiff tacitly acknowledges this because—at least with respect to any failure to train—he again contends that a plaintiff need not allege a pattern of constitutional violations where the need for training

---

[3] On September 26, 2022, this Court adopted the Recommendation and dismissed Plaintiff's *Monell* claim against Sheriff Brown without prejudice. ECF 107.

is so plainly obvious. ECF 253 at 23–27. As before, the Court concludes that this exception does not apply to Plaintiff's case.

In *City of Canton, Ohio v. Harris*, 489 U.S. 378 (1989), the Supreme Court left open the possibility that, in a narrow set of circumstances, "municipal liability could be triggered by evidence of a single violation of federal rights, accompanied by a showing that the municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 398 (1997). The previous iteration of Plaintiff's complaint contained no allegations of recurring situations that would make obvious the potential for constitutional violations. The SAC is similarly deficient.

Although Plaintiff alleges that the deputies routinely encounter persons with severe mental illness and psychosis, this is defined at too high level of generality given the complexity of Plaintiff's circumstances. The Court accepts that law enforcement officers will encounter individuals with mental illness. To be sure, the deputies apparently recognized Plaintiff's need for additional care, and had some procedure to address it, because they placed him in the BCU under the care of medical professionals. But there are no allegations to support a recurrence of individuals with alleged mental illnesses as severe as Plaintiff's—*i.e.*, individuals who cannot communicate basic needs such as warmth, food and drink, and the need for medical intervention. And even if there were, there also should be some suggestion that deputies would, with some regularity, need to intervene *despite* the mentally ill individual being under the supervision of medical and

mental health professionals.[4]  There are no such allegations, and therefore, the need for training is not so obvious as to put Sheriff Brown on notice.

Because the circumstances warranting the previous dismissal have not changed, the Court has not changed its mind regarding application of the relevant law. Consequently, it once again finds that Plaintiff's *Monell* claim regarding an unconstitutional policy, custom, practice, or failure to train and supervise is properly dismissed.

### B.    Negligent Supervision (Claim Five)

Defendants contend that Plaintiff's claim against Sheriff Brown for negligent operation of a jail is barred by the statute of limitations as enumerated in Colo. Rev. Stat. § 13-80-103(1)(c). Plaintiff argues that the one-year limitation period is inapplicable because he has sued Sheriff Brown in his official capacity. Plaintiff's argument is unavailing.[5]

---

[4] Indeed, Plaintiff's various pleadings are hamstrung by the fact that he frequently conflates the Sheriff Defendants and the Medical Defendants. He discusses them interchangeably and, at any given time, it is opaque as to who had what responsibilities over Plaintiff's care. Without specifics, neither the Court nor the Defendants could possibly determine what training was lacking and for whom.

[5] As he did with the Wellpath Defendants, Plaintiff contends that the Sheriff waived this argument because he did not raise it in his previous motion to dismiss. That might be true if the First Amended Complaint still controlled. But Plaintiff made the strategic decision to amend his pleadings once again. It is well-established that an "amended complaint supersedes the original complaint and renders the original complaint of no legal effect." *Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (citing *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991)). It would be untenable to suggest a plaintiff could start afresh and yet bind defendants to their previous positions responding to a legally inoperative document.

As an initial matter, Plaintiff does not state which public entity this purported official capacity claim is asserted against. To the extent he believes it is against the Arapahoe County Sheriff's Department, he is mistaken. "Under Colorado law municipalities and counties, not their various subsidiary departments, exist as 'bodies corporate and politic' empowered to 'sue and be sued.'" *Stump v. Gates*, 777 F. Supp. 808, 816 (D. Colo. 1991), *aff'd*, 986 F.2d 1429 (10th Cir. 1993) (citing Colo. Rev. Stat. § 31–15–101(1)(a), (b) and § 30–11–101(1)(a)). Thus, the Arapahoe County Sheriff's Department would not be a proper party under Colorado law and, instead, the official capacity claim would be treated as one against Arapahoe County itself. The claim would necessarily be brought against the Arapahoe County Board of County Commissioners. Colo. Rev. Stat. Ann. § 30-11-105 ("In all suits or proceedings by or against a county, the name in which the county shall sue or be sued shall be, 'The board of county commissioners of the county of _____'").

However, a Board of County Commissioners "does not exercise managerial control over either the sheriff or the detention center and its staff," nor does it have "a duty to ensure an inmate's safety at a detention center." *McGill v. Corr. Healthcare Cos., Inc.*, No. 13-cv-01080-RBJ-BNB, 2014 WL 2922635, at *6 (D. Colo. June 27, 2014) (citing *Terry v. Sullivan*, 58 P.3d 1098, 1102 (Colo. App. 2002)); *see also Frazier v. Jordan*, No. 06-1333, 2007 WL 60883, at *6 (10th Cir. Jan. 10, 2007) ("Colorado state law does not hold the [Board of County Commissioners] responsible for the acts of the sheriff or staff of a detention center in its county."). Instead, a "plaintiff may state a claim against the

Board by describing an unconstitutional policy or custom in place at a detention center that was implemented or established by the Board of County Commissioners." *Id.*

But here, Plaintiff's purported official capacity negligence claim implicates only the conditions of the detention center and the safety of detained or incarcerated persons. Plaintiff's contention that this claim is directed at an entity is belied by the allegations of his pleading. Plaintiff specifically alleges that Sheriff Brown failed in his duties to maintain the jail and ensure his employees were properly supervised and trained. ECF 212 ¶¶ 362–66. Thus, the Board would not be properly named in Plaintiff's negligence claim.

Sheriff Brown in his individual capacity is therefore the only proper defendant to Plaintiff's claim for negligent operation of a jail, and that claim is controlled by the one-year statute of limitations. In response to the Sheriff Defendants' motion, Plaintiff makes passing and conclusory reference to Sheriff Brown's purported *respondeat superior* liability. But even assuming Plaintiff could state such a claim, it would make no difference to the outcome here. The Colorado statute is clear that the one-year limitations period applies "*regardless of the theory* upon which suit is brought." Colo. Rev. Stat. § 13-80-103 (emphasis added). And "under § 30–10–506, the sheriff would be responsible for any injuries resulting from the deputy's alleged negligence." *Tunget v. Bd. of Cty. Com'rs of Delta Cty.*, 992 P.2d 650, 652 (Colo. App. 1999).  Accordingly, because Plaintiff filed this action outside of that period, his negligence claim against Sheriff Brown is barred.

### C.    Section 1983 Claims Under the Fourteenth Amendment

Plaintiff seeks to hold fourteen[6] sheriff's deputies liable in their individual capacities for deliberate indifference in violation of Plaintiff's Fourteenth Amendment rights. Plaintiff brings three iterations of his deliberate indifference claim: (1) Claim 1: deliberate indifference to serious mental health needs; (2) Claim 2: deliberate indifference regarding inadequate food and water; and (3) Claim 3: deliberate indifference regarding serious medical needs – cold exposure and frostbite.

The test for deliberate indifference has both objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). First, the plaintiff must show that objectively, the harm complained of is "sufficiently serious" to merit constitutional protection. *Id.* The Court assumes for the purposes of its analysis that the SAC pleads sufficient facts to support the objective component.

Second, the plaintiff must establish the defendants were subjectively aware of the substantial risk to the plaintiff's health or safety and that they acted in purposeful disregard of that risk. *Martinez*, 563 F.3d 1082, 1089 (10th Cir. 2009). The subjective component requires an "inquiry into a [defendant's] state of mind[.]" *Kikumura v. Osagie*, 461 F.3d 1269, 1293 (10th Cir. 2006), *overruled on other grounds as recognized in Robbins v. Oklahoma*, 519 F.3d 1242, 1246 (10th Cir. 2008) (quoting *Farmer v. Brennan*, 511 U.S. 825, 838 (1994)). The requisite state of mind is "akin to recklessness in the criminal law,

---

[6] Because there are inconsistencies between the Deputies listed in the caption and those listed under the "Parties" section of the SAC, the number may be thirteen deputies. Whatever the number, however, it has no effect on the outcome of Plaintiff's § 1983 claims here.

where, to act recklessly, a person must consciously disregard a substantial risk of serious harm." *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006) (cleaned up). In the Tenth Circuit, a plaintiff must show that a defendant "disregard[ed] the specific risk of harm claimed by the prisoner, not a more general risk." *Whiteman v. El Paso Crim. Just. Ctr.*, No.10-cv-02430-WYD-KLM, 2011 WL 2610202, at *4 (D. Colo. July 1, 2011).

Out of the nearly 300 paragraphs[7] comprising Plaintiff's SAC, the individual deputies are specifically named in only 19 paragraphs. And of those 19 paragraphs, only four are alleged against a single named deputy. The other 15, despite naming specific deputies, are textbook examples of group pleading. The Court's tabulation is laid out below:

| Individual Sheriff's Deputy | Allegations Specific to Defendant |
|---|---|
| Thomas Hobaugh | ¶¶ 11, 32, 58, 103, 128, 144, 182, 183, 185 |
| Christopher Wenzel | ¶¶ 11, 58, 92, 103, 175, 176, 177, 180, 181, 183 |
| Jeffiano Palazzolo | ¶¶ 11, 58 |
| John Craft | ¶¶ 11, 58, 95, 97, 103 |
| Matthew Smith | ¶¶ 11, 58, 95, 97, 103, 128, 144 |
| Collin Roll | ¶¶ 11, 58, 95, 144 |
| Cody Houghtaling | ¶¶ 11, 58, 97, 103, 128, 144 |
| Matthew Miller | ¶¶ 11, 58, 97, 103 |
| Jakob Davis | ¶¶ 11, 58, 97, 103, 128, 144 |
| Paul Cook | ¶¶ 11, 58, 103 |
| Barbara Dube[8] | ¶¶ 58, 95 |
| Jeremy Herko[9] | ¶ 11 |

---

[7] Although the SAC appears to contain 380 enumerated paragraphs, it jumps from paragraph 230 to paragraph 327, thus mistakenly omitting numbers 231 through 326.

[8] Deputy Dube is not named in the introductory paragraph listing all the deputies. *See id.* ¶ 11. But she is named in the caption, the attendance record, and an allegation regarding what she "would have" observed. *See id.* ¶¶ 58, 95.

[9] Plaintiff voluntarily dismissed without prejudice Defendant Jeremy Herko. *See* ECF 30. Although Deputy Herko is not named in the caption of Plaintiff's SAC, he is listed in the "Parties" section. ECF 212 ¶ 11. That, however, is the only allegation addressing Deputy Herko specifically by name.

| Shane Purcell | ¶¶ 11, 58, 144, 173, 174, 175, 176, 177[10], 180, 181 |
| Thomas Triska | ¶¶ 11, 58, 144, 173, 174, 175, 176, 177, 180, 181 |

Paragraph 11 is Plaintiff's general statement that these individuals are employed as Arapahoe County Sheriff's Deputies. ECF 212 ¶ 11. The remaining allegations can be broken into several categories: (1) attendance records for various dates (¶¶ 58, 103); (2) statements regarding what the deputies "would have" perceived in various circumstances (¶¶ 95, 97, 103, 175, 176, 177, 183, 184); (3) training these deputies did or did not receive (¶¶ 128, 144); (4) allegations regarding what Deputies Wenzel and Hobaugh observed (¶¶ 32, 92; 182, 183, 185); and (5) Deputies Triska and Purcell's actions regarding the alleged frostbite (¶¶ 173, 174, 177, 180). All other allegations in the SAC either concern the Wellpath Defendants or simply refer to "Defendants" without making any distinction between the individuals and often lumping the deputies and Wellpath Defendants together.

### 1.   Claims One and Two

To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff, when the defendant did it, how the defendant's action harmed the plaintiff, and what specific legal right the plaintiff believes the defendant violated. *Nasious v. Two Unknown B.I.C.E. Agents, at Arapahoe Cnty. Just. Ctr.*, 492 F.3d 1158, 1163 (10th Cir. 2007); *see also Bennett v. Passic*, 545 F.2d 1260, 1262–63 (10th Cir. 1976) ("Personal participation is an essential allegation in a § 1983 claim.").

---

[10] While this paragraph does not name Deputies Purcell, Triska, or Wenzel, it does state "these specific deputies," which the Court has liberally construed as a reference to the preceding paragraph wherein they are named.

With respect to Plaintiff's claims that the individual deputies were deliberately indifferent to his serious mental health needs (Claim One) and the inadequate provision of food and water (Claim Two), the SAC has just one paragraph naming a deputy individually. Specifically, Plaintiff alleges that on "December 21, 2018, Defendant Wenzel recorded in the pod log that [Plaintiff] refused a meal and drink. [Plaintiff] did not receive food and drink at that time." ECF 212 ¶ 92. Aside from this, the remaining allegations devolve into group pleading, passive allegations, and speculation. For example, Plaintiff alleges:

> 58.      Jail policy required Mr. Pinto-Rios to be observed by jail deputies on shift in the BCU at 15-minute intervals for eight days in-person and via video. The Defendant deputies also conducted additional regular rounds approximately every 30-60 minutes to visually check on the welfare of inmates, including Mr. Pinto-Rios. The below-named Defendant deputies were on 10 or 12 hour shifts in Mr. Pinto-Rios' unit performing these duties on the following dates:
>
> > a.   December 19, 2018: Deputy Wenzel
> > b.   December 20, 2018: Deputy Hobaugh
> > c.   December 21, 2018: Deputy Wenzel
> > d.   December 22, 2018: Deputy Wenzel
> > e.   December 23, 2018: Deputies Craft, Dube, Palazzolo, and Smith
> > f.   December 24, 2018: Deputies Dube, Roll, Smith, and Craft
> > g.   December 25, 2018: Hobaugh, Miller, Davis, Smith, and Houghtaling
> > h.   December 26, 2018: Davis, Cook, Wenzel, Craft, Smith, Purcell, and Triska
> > i.   December 27, 2018: Deputies Smith, Hobaugh, and Wenzel
>
> 59.      The above-identified Defendant deputies also each observed Mr. Pinto-Rios 3x/day during meal passes and while accompanying medical and mental health staff 2-4x/day to distribute medications and medically evaluate Mr. Pinto-Rios.
>
> 60.      Pursuant to the suicide watch protocol, the Defendant deputies made handwritten notes of their observations of Mr. Pinto-Rios at 15-minute intervals.
>
> 61.      Defendant deputies have stated that they are trained to report any injury, medical issue, or something abnormal outside of the medication rounds to notify the nurse on duty.
>
> 62.      The Deputy Defendants did not report anything to the nurse.

These allegations are problematic for several reasons—chief among them that in paragraph 58, Plaintiff never indicates which 10- or 12-hour shift each deputy was on, nor offers any description of where the deputies were stationed within the BCU at any given time. Further, the next paragraph then alleges *each* of these deputies observed Plaintiff three times per day for meals and two to four times per day for medical rotations. But because the deputies work only 10-to-12-hour shifts, this allegation is internally inconsistent and therefore implausible. The Court is not required to give credence to such inconsistent allegations, and it does not do so here. *See McKinley Med., LLC v. Medmarc Cas. Ins. Co., No*. 11-cv-01218-CMA-KMT, 2012 WL 987821, at *5 (D. Colo. Mar. 23, 2012) (on Rule 12(b)(6) motions, "courts must liberally construe and accept as true allegations of fact in the complaint and inferences reasonably deductive therefrom, [but] they need not accept factual claims that are internally inconsistent") (cleaned up).

The remaining allegations state only that "Defendants" made notations and were supposed to, but did not, report any abnormalities to the duty nurse. But the Court is left to guess at which deputies made notes, what the notes said, and what purportedly went unreported. While "[s]pecific facts are not necessary" under the notice pleading standard, at least *sufficient* facts are to survive a Rule 12(b)(6) motion. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007); *Khalik*, 671 F.3d at 1191 ("[I]n examining a complaint under Rule 12(b)(6), [courts] will disregard conclusory statements[.]"). The SAC falls short of this requirement.

Plaintiff's reliance on group pleading requires the Court to speculate concerning which Defendants are charged with what specific conduct. The Court declines to do so.

*See Pahls v. Thomas*, 718 F.3d 1210, 1225 (10th Cir. 2013) ("Because § 1983 and *Bivens* are vehicles for imposing personal liability on government officials, we have stressed the need for careful attention to particulars. It is particularly important in such circumstances that the complaint make clear exactly who is alleged to have done *what* to *whom*, as distinguished from collective allegations.") (cleaned up). The Tenth Circuit has stressed that, where defendants' powers and duties vary, the "need for individualized allegations is especially important." *Brown v. Montoya*, 662 F.3d 1152, 1165 (10th Cir. 2011). The Court cannot discern from the SAC's collective allegations "*specific* actions taken by *particular* defendants" sufficient to impose personal liability on the individual deputies. *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (emphases in original). In light of this overall lack of specificity, the SAC fails to plausibly establish that any deputy had the requisite knowledge of Plaintiff's serious mental health needs, let alone chose to disregard them.[11] Accordingly, the Court dismisses Claim One against the Deputies on these grounds.

As to the purported failure to provide adequate food and water, Plaintiff generally alleges that "[o]ver 10 ten (sic) days, Plaintiff did not receive adequate food and water and his physical condition deteriorated." ECF 212 at ¶ 85. Thereafter, however, the SAC again devolves to group pleading: "Each on-duty Defendant during this period failed to provide sufficient food or water to Mr. Pinto Rios, failed to take appropriate measures for food and water in light of his mental health condition, [and] failed to take steps to remedy

---

[11] And the fact that certain of the deputies may have lacked crisis intervention or special needs training, *see* ECF 212 at ¶¶ 128, 144, does not establish what those deputies knew with respect to Plaintiff's mental health concerns.

his emaciated/dehydrated state[.]" *Id*. at ¶ 156. Plaintiff's other allegations fare no better. For example, he passively alleges that he was not provided food and drink but offers no indication as to which deputy had the duty for the missed meals or beverages. *See id*. at ¶¶ 88, 90, 91, 95, 97, 100, 101.

When the specific deputies are named, it is nevertheless done via group pleading:

> 95.   Video produced in discovery shows that on December 24, 2018, Mr. Pinto-Rios was not given water with meals or otherwise provided water and not eating which would have been observed by Defendants Smith, Roll, Dube, and Craft.

*           *           *

> 97.   Video produced in discovery shows that on December 25, 2018, Mr. Pinto-Rios was not given any water with meals, at most received 2 cups of water otherwise, and was not eating, which would have been observed by Defendants Smith, Houghtaling, Miller, Craft, and Davis.

These allegations suffer from multiple deficiencies. First, Plaintiff's contention that various events were videotaped, and therefore that these deputies "would have" observed Plaintiff not eating or drinking, is akin to pleading "upon information and belief." Critically, the SAC lacks any additional factual allegations that would support such beliefs. *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."). For instance, there are no facts—other than their mere attendance at work—to establish that these named deputies reviewed any video footage or were watching the video feed live. Without more, Plaintiff's allegations regarding what "would have been observed" are wholly speculative and insufficient to establish the deputies had the requisite knowledge.

And even assuming *arguendo* that these deputies saw the footage and knew Plaintiff was not eating or drinking, Plaintiff proceeds to allege that these deputies passed this information on such that it was ultimately communicated to medical providers. *See* ECF 212 at ¶ 103. This action is contrary to deliberate indifference and undercuts Plaintiff's theory that the Deputies violated the Eighth Amendment.[12]

Because Plaintiff's generalized accusations do not, without more, establish any subjective willfulness to deprive Plaintiff of food and water, the Court dismisses Claim Two as to the Deputy Defendants.

### 2.    Claim Three

Plaintiff asserts Claim Three (Deliberate Indifference Regarding Serious Medical Needs – Cold Exposure and Frostbite) against Deputies Purcell, Triska, Wenzel, and Hobaugh. ECF 212 at 44.[13] This claim involves allegations that on or about December 26 and 27, 2018, "temperatures in Mr. Pinto-Rios['] cell dropped to below freezing" and he suffered frostbite to his fingers, feet, and nose that began with his nose the morning of December 26. *Id.* ¶¶ 328–29.

---

[12] The same analysis applies to Plaintiff's allegation that Deputy Wenzel noted Plaintiff's refusal of a meal and drink. *See id.* at ¶ 92. First, Wenzel did not deliberately refuse to give Plaintiff food and water; rather, it was Plaintiff who refused. And, at minimum, Wenzel then recorded Plaintiff's refusal presumably to inform other individuals on duty. Moreover, Plaintiff has not offered any case law to suggest missing a single meal and drink would be sufficiently serious such that Wenzel would have the requisite subjective intent to sustain a deliberate indifference claim.

[13] Claim Three is also asserted against Wellpath Defendants Keller, Trujillo, and Peterson. *Id.*

<u>Deputy Hobaugh</u>

The only allegations against Deputy Hobaugh are that he accompanied Deputy Wenzel, MHP Keller, and Nurse Trujillo during the morning med pass on December 27, 2018, and saw that Plaintiff's fingers were purple. *Id.* ¶¶ 182–83. At that time, however, Nurse Trujillo said she would contact Dr. Peterson. *Id.* ¶ 185. Although Dr. Peterson allegedly delayed treating Plaintiff's frostbite, there are no allegations that Deputy Hobaugh knew there was a risk of such delay, let alone disregarded such a risk. Consequently, the Court dismisses Claim Three as against Deputy Hobaugh. *See Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and she must also draw the inference).

<u>Deputies Wenzel, Purcell, and Triska</u>

With respect to Plaintiff's allegations against Deputies Wenzel, Purcell, and Triska, the same analysis applicable to Deputy Hobaugh also applies to the allegations that Deputy Wenzel saw Plaintiff's purple fingers during the morning med pass on December 27, 2018. There are no allegations to suggest that Deputy Wenzel knew there was further risk to Plaintiff's health considering Nurse Trujillo's indication that she would contact a doctor. Thus, Plaintiff fails to establish deliberate indifference with respect to this conduct.

Turning to Plaintiff's allegations regarding December 26, 2018, the SAC contends that Deputy Wenzel accompanied Deputies Purcell and Triska to retrieve Plaintiff from his cell that morning to transport Plaintiff to and from court. ECF 212 ¶¶ 174–75. Plaintiff alleges that these deputies had direct contact with his hands and feet because they

dressed and handcuffed Plaintiff and placed him in a wheelchair. *Id*. ¶ 177. In addition, he alleges that Deputies Triska and Purcell "ignored the obvious signs of medical distress" and wrapped or covered Plaintiff's hands to "obscure the frostbit condition from view." *Id*. ¶ 174. Upon his return from court, Plaintiff had his mugshot and fingerprints taken. *Id*. ¶ 178. The booking photo reveals that there were red dots on Plaintiff's nose at this time, which is a sign of early or superficial frostbite. *Id*. ¶¶ 178–79. Plaintiff alleges that Deputies Purcell, Triska, and Wenzel remained with him during the booking process and saw the discoloration on his fingers and face. *Id*. ¶ 180. Plaintiff further alleges that Deputies Purcell, Triska, and Wenzel "ignored his obvious, serious medical needs" and placed him back into the dangerous conditions of the jail cell at around 11:45 AM. *Id.* ¶ 181. By the following morning, December 27, 2018, Plaintiff's fingers were purple and over the course of eight hours turned black. *Id*. ¶¶ 182–91. As a result of the frostbite damage, Plaintiff ultimately had to have the tips of his fingers and several toes amputated. *Id*. ¶ 198.

Taking these allegations as true and viewing them in the light most favorable to Plaintiff, the Court concludes that Plaintiff has plausibly alleged that Deputies Wenzel, Triska, and Purcell knew—and deliberately disregarded—that Plaintiff was at risk of serious medical injury. In their briefing, Defendants dispute the SAC's characterization of how Plaintiff's frostbite appeared on December 26, arguing that Plaintiff is an admittedly unreliable narrator and that the jail video footage contradicts Plaintiff's claims that his hands were obviously frostbitten at that time. *See* ECF 230 at 15–17. While an argument along such lines may or may not eventually have merit as a factual matter, it necessarily depends on an examination and evaluation of the available evidence. At this stage in the

proceedings, however, Plaintiff need not prove the allegations in his complaint. He must only allege facts that state a non-speculative claim for relief and provide the Defendants with notice of the actual grounds of the claim(s) against them. Accepting as true all well pleaded allegations in the SAC, the Court finds that Plaintiff has sufficiently alleged a claim for relief under the Eighth Amendment against Deputies Wenzel, Triska, and Purcell. Accordingly, the motion to dismiss Claim Three against Deputies Wenzel, Triska, and Purcell is denied.[14]

## IV.   CONCLUSION

For the reasons stated above, the Sheriff Defendants' Motion to Dismiss the Second Amended Complaint, ECF 230, is GRANTED with respect to Claims One, Two, Four, and Five as against the Sheriff Defendants, and Claim Three as against Deputy Hobaugh. The Motion is DENIED with respect to Claim Three as against Deputies Purcell, Triska, and Wenzel.

DATED: March 25, 2024

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

---

[14] To the extent that Plaintiff attempts in his Response to recast his allegations as asserting a conditions of confinement claim based on a totality of the circumstances, the Court notes that Plaintiff may not amend his pleading in such a fashion; because the SAC contains no such claim, the Court does not address this argument further.